**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DENISE ELAYNE JONES and MARILYN A. MANZI, individually and on behalf of all other similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>CVS HEALTH CORPORATION, f/k/a CVS CAREMARK CORPORATION, *et. al.*,<br><br>  Defendants. | Civil Action<br><br>No. 24-cv-1703 |

**MEMORANDUM**

**Younge, J.**                                                                                                                    **July 29, 2025**

**I.     INTRODUCTION**

Over a year ago, on April 23, 2024, Plaintiffs Denise Elayne Jones and Marilyn A. Manzi initiated this lawsuit against Defendants CVS Health Corporation, f/k/a CVS Caremark Corporation, SilverScript Insurance Company, LLC, Caremark L.L.C., f/k/a Caremark Inc., CVS Caremark Part D Services, LLC, and CVS Pharmacy, Inc. (collectively herein "Defendants"). (Compl., ECF No. 1). Since then, the Court has entered orders resolving Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 43), denying Defendants' Motion for Leave to Appeal (ECF No. 51), and appointing a special master for discovery that the parties agreed to through stipulation (ECF No. 55). Despite this procedural history, on June 24, 2025, Defendants filed the present Motion to Compel Arbitration (ECF No. 58), arguing for the first time that Plaintiff Jones' claims are bound by an arbitration agreement, and therefore cannot be litigated in this Court.

(Def.'s Brief, ECF No. 58-1, p. 6).[1] Because Defendants failed to raise the issue of arbitrability until after engaging in litigation for over thirteen months—including motion practice and discovery—they have waived their right to arbitrate. Accordingly, Defendants' Motion to Compel Arbitration is **DENIED**.[2]

## II.  BACKGROUND

Plaintiffs Denise Elayne Jones and Marilyn A. Manzi, on behalf of themselves individually and a putative class, allege that Defendants conspired with select drug manufacturers to prevent Medicare beneficiaries from accessing cheaper generic versions of said manufacturers' drugs. (Am. Compl., ECF No. 44 ¶ 1). Medicare Part D provides optional prescription-drug coverage through private-public partnerships, allowing eligible beneficiaries to enroll in plans that Medicare contracts with private companies. (Am. Compl. ¶ 2). One such contractor, known as a Part D Sponsor, is SilverScript, whose prescription drug plan is administered by CVS. (Am. Compl. ¶¶ 2, 6). Plaintiffs filed their Complaint on April 23, 2024, contending that Defendants' alleged scheme harmed them as SilverScript beneficiaries, and violated federal and state claims laws in the process. (Am. Compl.).

On June 3, 2024, at the request of the parties, the Court set a briefing schedule for the Defendant's anticipated Motion to Dismiss. (ECF No. 16). The order extended the deadline Defendants would have had to file said Motion to July 19, 2024. (ECF No. 16). Thereafter, on June 20, 2024, Defendants filed a Motion to Stay Discovery or in the Alternative Adjourn the R16 Conference, of which the Court granted, adjourning the conference to August 21, 2024. (ECF No.

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.
[2] The Court finds this Motion appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f).

18). On July 19, 2024, in accordance with the briefing schedule, Defendants filed their Motion to Dismiss. (ECF No. 19).[3]

On August 14, 2024, the parties filed their Joint Rule 26(f) Report for the Court to consider prior to the R16 conference. (ECF No. 22). In the Report, Defendants again requested the Court "to stay discovery pending resolution of the motion dismiss consistent with well-established Third Circuit law." (ECF No. 22, p. 13). Then, on September 29, 2024, the parties submitted a stipulated scheduling order, which included a "stay of discovery pending resolution of Defendants' motion to dismiss in exchange for Defendants' agreement to reproduce certain documents and data from the Ellsworth matter." (ECF No. 29). The Court signed and entered this stipulated scheduling order on October 9, 2024, which set the close of discovery to nine months after the Court entered an order that denied the Motion to Dismiss. (ECF No. 35). Thereafter, that same month, the Court entered the parties' stipulated protective order and procedure for discovery of electronically stored information ("ESI"). (ECF Nos. 36 & 40).

On October 31, 2024, the Court entered an Order for Defendants' Motion to Dismiss Plaintiff's Complaint that dismissed one state law under Count VI, allowed Counts I, II, and III to continue to discovery, and provided leave for Plaintiff to amend Count V. (ECF No. 43). In accordance with the Order, Plaintiffs filed their Amended Complaint on November 14, 2024. (ECF No. 44). A few days later, on November 18, 2024, with respect to the Order, Defendants filed a motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (ECF No. 45). If granted, Defendants also requested that proceedings be stayed pending resolution of the appeal. (ECF No. 45). On December 16, 2024, the Court denied this motion. (ECF No. 51). Then, after

---

[3] During this period, the parties filed several Applications for Admission Pro Hac Vice or Motions for Pro Hac Vice, of which the Court granted. Specifically, Defendants filed two. (ECF No. 12 & 13).

the Court granted Defendants' request for an extension to file their Answer to the Amended Complaint, Defendants filed their Answer on December 20, 2024. (ECF No. 52).

On January 10, 2025, the Court entered an order appointing a special master for discovery, as proposed and stipulated by the parties. (ECF No. 55).[4] Although the special master was appointed for the "purpose of supervising and facilitating the resolution of discovery disputes among the parties," (ECF No. 55, p. 2), the parties had already been exchanging discovery prior to this appointment.[5] Plaintiffs provided their initial disclosures on June 7, 2024 and Defendants provided their initial disclosures on June 21, 2024. (ECF No. 22, p. 17). Then, on July 25, 2024, Plaintiffs served Defendants with their first set of Request for Production of Documents ("RFPs"), of which Defendants served responses on November 6, 2024, December 20, 2024 and April 16, 2025. (Pl.'s Resp., ECF No. 64, p. 9). On March 7, 2025, Defendants served their first set of RFPs and first set of Interrogatories ("ROGs") on Plaintiff Jones, requesting her SilverScript membership identification number and additional identifying information. (Def.'s Brief, p. 8). Accordingly, Plaintiff responded to the ROGs with her member identification number, her home address, and her telephone number. (Def.'s Brief, p. 8).

Relying on this response, Defendants claim to have identified Jones as an enrollee for their benefits through her employer as part of an Employer Group Waiver Program[6] ("EGWP")—not an individual SilverScript beneficiary through Medicare Part D as outlined in the Complaint.

---

[4] As of the filing date of this memorandum, the parties have not filed motions related to discovery, so the special master has not provided the court with any report and recommendation. However, according to Plaintiffs, the parties have litigated three discovery disputes before the special master. (Pl.'s Resp., ECF No. 64, p. 9).

[5] The parties have also engaged in substantial negotiations related to discovery, including about search terms and custodians. (Pl.'s Resp., ECF No. 64, p. 9).

[6] "An EGWP is an employer or union-sponsored health plan where the employer contracts with a company that manages Part D benefits in order to provide access to federally-subsidized drug coverage for active or retired employees." (Def.'s Ex. B, ECF No. 58-2, p. 2).

(Def.'s Brief, p. 7, n.1). Further, Defendants claim that Jones signed up for a CVS.com account on their website on May 24, 2023. When signing up for the account, Jones would have had to agree to CVS.com's Terms and Conditions, which included an arbitration agreement. (Def.'s Brief, p. 10). Accordingly, Defendants met and conferred with Plaintiffs to discuss arbitrability. (Def.'s Brief, p. 8). This meeting was the first time that Defendants raised the issue of arbitrability with Plaintiffs. (ECF No. 58-2 ¶ 10; Pl's Resp., p. 9). On June 16, 2025, Plaintiffs informed Defendants that they intended to continue with litigation. (Def.'s Brief, p. 8). As a result, on June 24, 2024, Defendants filed the present Motion to Compel Arbitration. (ECF No. 58). The filing of this Motion was the first time the issue of arbitrability was brough to the Court's attention.[7]

### III.   DISCUSSION

The Federal Arbitration Act ("FAA") "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Pursuant to the FAA, courts "compel arbitration of claims covered by a written, enforceable arbitration agreement." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (citing FAA, 9 U.S.C. §§ 3, 4). "Courts must assess the enforceability of arbitration provisions in contracts the same as any other contract." *Laguna v. Chester Hous. Auth.*, 662 F. Supp. 3d 545, 547 (E.D. Pa. 2023) (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 142 S. Ct. 1708, 1713-14 (2022)). Accordingly, as this Court would do for any other contract litigated in federal court, the Court must "apply the usual federal procedural rules, including any rules relating to a motion's timeliness." *Morgan*, 596 U.S. at 419. Here, amongst those rules, and in response to Defendants' Motion, Plaintiff Jones invokes waiver. (Pl.'s Resp., p. 5). Plaintiff argues that Defendants waived their right to arbitrate because Defendants "acted inconsistently with an intent to assert their right

---

[7] The parties have participated in two virtual conferences with the Court (ECF No. 25 & 38).

to arbitrate" by "ma[king] the conscious decision to pursue litigation." (Pl.'s Resp., p. 5) (internal quotations omitted and insertions accepted).

The Supreme Court defines waiver as "the intentional relinquishment or abandonment of a known right." *Morgan*, 596 U.S. at 417 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). In *Morgan*, the Supreme Court clarified that the FAA does not require an additional "prejudice requirement" for waiver in the arbitration context. *See Morgan*, 596 U.S. at 419. Instead, as would be applied for the waiver of any contractual right, a court must determine whether the party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Id.* The application of this standard for waiver must be "informed by the circumstances and context of each case." *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023) (internal quotation marks omitted). In other words, the totality of circumstances must demonstrate that Defendants displayed their intention to litigate Plaintiff Jones' claims.

Our Circuit's analysis of waiver in *White* is instructive. There, Samsung moved to enforce an arbitration agreement that the plaintiffs supposedly agreed to when they setup their Samsung SmartTVs. *See White*, 61 F.4th at 337. Samsung knew from the "outset of litigation… that plaintiffs' claims could be arbitrable," but did not know for certain because only "certain SmartTVs require[d] users to agree to arbitration[.]" *Id.* at 340. If Samsung had the model number or serial number on a SmartTV, then they could tell if that SmartTV "contain[ed] an arbitration clause in the Terms and Conditions." *Id.* at 337. However, when the plaintiffs filed their initial complaint in 2017, it did not include this information. *Id.* Nevertheless, Samsung engaged in years of motion practice, including the filing of three motions to dismiss. *See id.* The district court fully granted the first two and granted the third only in part, leaving the plaintiffs' second amended complaint with a single remaining claim. *See id.* Thereafter, Samsung moved for reconsideration of the

Court's order for the final motion to dismiss, which the court denied. *Id.* During this extensive motion filing, the parties engaged in discovery. *See id.* Samsung "submitted a proposed discovery plan in which they did not mention a possible right to arbitrate." *Id.* Then, in April 2018, prior to the district court's decision for the second motion to dismiss, plaintiff provided their initial disclosures, which included the model and serial numbers of their SmartTVs. *Id.* Subsequently, nearly two years after receiving this information, "Samsung notified the Court in May 2020 that it would move to compel individual arbitration." *Id.*

In consideration of these facts, the Circuit held that Samsung "waived its right to arbitration" because "its actions express[ed] an intent to litigate[.]" *Id.* at 340. First, as mentioned, Samsung knew from the outset of litigation that the plaintiffs' claims were potentially arbitrable. Then, by 2018, two years prior to mentioning the potential of arbitration, Samsung should have known that plaintiffs' claim were arbitrable because Samsung had received their model and serials numbers. However, Samsung "continued to pursue dismissal on the merits through litigation" by filing motions to dismiss, a motion for reconsideration, and a motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *White*, 61 F.4th at 341. Further, the parties' discovery plan "asked if the case was subject to court-annexed arbitration," so "completeness would suggest that Samsung should have disclosed that another type of arbitration may be applicable." *Id.* at 340. In consideration of these circumstances, the Circuit held that "Samsung's pursuance of dismissal of the action and failure to notify plaintiffs or the Court of its right to arbitrate, prior to May 2020, demonstrated a decision to pursue the benefits of litigating its arbitrable claims and is inconsistent with an intent to arbitrate." *Id.* at 341.

Like *White*, Defendants knew from the outset that there was a possibility that Jones' claims were subject to an arbitration agreement. Defendants were aware that users who "elect to sign up

for a CVS.com account… would have had to specifically confirm [their] agreement to CVS's hyperlinked then-current Terms of Use," which included an arbitration agreement. (ECF No. 58-4 ¶¶ 7, 13). While an account "is not necessary to fill prescriptions at CVS Pharmacy," said account would "allow[] a user to access CVS Pharmacy services[.]" (ECF No. 58-4 ¶¶7). In Plaintiffs' Complaint and Amended Complaint, Jones alleged that Defendants prevented her from purchasing generic drugs that were cheaper than the name-brands that she received from CVS Pharmacies. (Compl., ECF No. 1 ¶ 23; Am. Compl., ECF No. 44 ¶ 23). Thus, from the outset, Defendants were on notice that Jones' claims could have been arbitrable if she had signed up for their optional account. Further, the Complaint and Amended Complaint included Jones' full name and her state of residence, (Compl. ¶ 23; Am. Compl. ¶ 23), of which was presumably enough information to identify "the roughly three dozen people in the State of Maryland named 'Denise Jones' who signed up for an account via CVS.com," but not enough to determine that any of them were Plaintiff Jones. (Def.'s Brief, p. 8). Accordingly, and similar to Samsung in *White*, Defendants knew that the "plaintiffs' claims ***could*** be arbitrable," were aware of what was "necessary to determine [arbitrability] with accuracy," and as outlined below, still made litigious decisions. *White,* 61 F.4th at 340. (emphasis added). This analysis of how a defendant behaved in the face of potential arbitrability led the Circuit to hold that Samsung's actions evinced a preference for litigation over arbitration. *See id.* at 340-41.

Despite Defendants knowing that arbitration was potentially available, Defendants "sought to have this case dismissed by a court on the merits." *Id.* at 340. In anticipation of the Defendants' Motion to Dismiss, the Court granted the parties' request for a briefing schedule, that gave Defendants additional time to file their motion. Subsequently, Defendants filed a fifty-four-page brief arguing that the Court should dismiss Plaintiffs' claims, of which made no mention of

arbitration. (ECF No. 19-1). Defendants point out that a "motion to dismiss will not always evince an intent to litigate instead of arbitrate," (Def.'s Reply, p. 9) (citing *White*, 61 F.4th at 340), suggesting that their motion fits this category because the briefing is "primarily focused on jurisdictional grounds, preemption, and exhaustion." (Def.'s Reply, p. 9). The Court disagrees, as Defendants dedicated a significant portion of their briefing (at least sixteen pages) arguing that Plaintiffs' claims were not sufficiently pled under their respective elemental standards. (ECF No. 19-1, p. 16-42). Moreover, Defendants continued to make such arguments in their Reply to Plaintiff's Response to the Motion. (ECF No. 37). In other words, Defendants, as a major corporation that is embroiled in major and continuous litigation of the type involved in this case, clearly displayed a desire to win this case on the merits. Such a victory on the merits would have created a powerful and persuasive disincentive to the challenge of future litigants. A win in arbitration, though also desirable, would not yield long term advantages or operate as a disincentive to future litigation. Accordingly, because Defendants sought a "judicial determination of the merits of arbitrable issues," here through a "dispositive motion," they have demonstrated an intent to litigate their claims through the Court.[8] *Smith-Bishop v. Experian Info. Sols., Inc.*, No. 24-00408, 2025 WL 635329, at *8 (D.N.J. Feb. 27, 2025). Having failed to get Jones' claims dismissed on the merits, they now want to pursue arbitration, the less advantageous route, to get rid of Jones' claims. However, waiver prevents Defendants from, as the expression goes, "having their cake and eating it too."

---

[8] Further, Defendants' filing of non-dispositive motions and participation in court conferences, also indicates their "apparent preference for litigation." *White*, 61 F.4th at 340. Like *White*, Defendants moved for pro hac vice, participated in court conferences, and filed a motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Finally, Defendants' conduct regarding discovery further expressed their intent to litigate and waive their right to arbitrate. Like, in *White*, Defendants "continuously sought and agreed to stays in discovery… to pursue [a] motion[] to dismiss on the merits." 61 F.4th at 340. Even before the Court received Defendants' Motion to Dismiss, they filed a motion to stay the proceedings until the Court ruled on the Motion to Dismiss. When the Court denied this request, and instead adjourned the R16 Conference, Defendants stipulated with Plaintiffs to start discovery after the Court decided the Motion. Not only does this indicate that Defendants wanted the Court to decide Plaintiff's claims on the merits before the case moved forward, but it also indicates that Defendants did not want to engage in fact finding. Discovery would have been the process for Defendants to ascertain the additional information that they needed to be certain that Jones' claims were arbitrable. The *White* Court similarly highlighted Samsung's avoidance of discovery, explaining that, absent the stays, discovery "may have resulted in receipt of the necessary Model and Serial Numbers" that Samsung needed to determine arbitrability. 61 F.4th at 340. Here, it became clearly apparent that Defendants wanted to litigate Jones' claims on the merits when they continually requested that the Court stay the discovery process, which would have been the primary mechanism to determine the arbitrability of Jones' claims with accuracy. Accordingly, if Defendants were really committed to the arbitration of the claims herein, it would have pursued discovery at its earliest convenience.

Then, even after discovery eventually started on October 31, 2024, Defendants did not file their first RFP or ROG to obtain the information that they needed until over four months later—March 7, 2025.[9] Prior to the start of discovery, the Court had already approved the parties'

---

[9] The parties stipulated scheduling order, that the Court approved, included a stay of discovery pending resolution of Defendant's motion to dismiss. (ECF No. 35). The Court resolved

stipulated protective order and ESI procedures, so the parties had the usual safeguards it needed to engage in discovery. With those safeguards in place, there is no satisfactory explanation for why Defendants did not request the information that it needed to determine Jones' arbitrability at the start of discovery. The appointment of the discovery master in January, and the parties' ongoing negotiation of search terms could not have delayed Defendants from serving their first discovery request. In fact, in spite of these alleged reasons for delays, Defendants had served two responses to Plaintiffs' RFP before serving their own request. This timeline of discovery, on top of the months of dispositive motion practice prior, does not demonstrate diligence as Defendants suggest, but rather an unexplained delay in Defendants' efforts at information gathering, which is indicative of waiver. *See Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.,* No. 22-737, 2024 WL 5117602, at *5 (D.N.J. Dec. 13, 2024) (collecting cases where courts found waiver and the party seeking arbitration did not offer a sufficiently reasonable explanation for its delay). "As the Circuit noted in *White*, at a minimum Defendant had an obligation to assert that the dispute *may* be arbitrable." *Laguna v. Chester Hous. Auth.*, 662 F. Supp. 3d 545, 548 (E.D. Pa. 2023).[10]

       Defendants argue that this case is different from *White* because they informed Plaintiffs of Jones' arbitration agreement within a month of having "the means to determine arbitrability," as opposed to the two years it took Samsung. (Def.'s Reply, p. 7). This is certainly an important

---

Defendants' motion to dismiss on October 31, 2024, so discovery started that same day. (ECF No. 43).

[10] Even if Defendants were not certain that Jones signed an arbitration agreement, and "discovery [was] necessary to establish arbitrability, such discovery can be requested." *See Laguna v. Chester Hous. Auth.,* 662 F. Supp. 3d 545, 548 (E.D. Pa. 2023) (citing *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013)); *see also Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 320 (3d Cir. 2024) ("Because the record was insufficient for the district court to make that threshold determination before compelling arbitration, we remanded the case for further fact discovery.").

distinction between the two cases. However, the two-year period of failing to act was not the sole basis for the *White* Court's decision to find waiver. As the Court previously outlined, the Circuit also found waiver because Samsung's motion practice (i.e. filing a motion to determine the merits), their actions during discovery, their non-merits motion practice, and their knowledge of potential arbitrability at the outset. *See White*, 61 F.4th at 340-41. The Circuit analyzed all these facts because the question of "whether waiver has occurred… is informed by the circumstances and context of each case." *Id.* at 349. In fact, in reviewing the totality of circumstances, the Circuit concluded their analysis of waiver by returning to Samsung's knowledge of potential arbitrability:

> Through its actions expressing an intent to litigate, Samsung waived its right to arbitration. As the District Court noted, Samsung is "a large and sophisticated corporate leader in electronics" and as such is "uniquely positioned to ... know exactly which models had arbitration agreements for its products." Therefore, even without the Serial Numbers, Samsung **should have known it *could* arbitrate plaintiffs' claims and yet expressly went forward with litigation**. There is no clear error in the factual findings of the District Court and, pursuant to *Morgan*, Samsung waived its right to arbitrate.

*Id.* at 341. (emphasis added) (citations omitted). Consistent with this analysis, and as explained in this Court's review, Defendants should have known it could arbitrate plaintiffs' claims, and yet expressly went forward with their litigation efforts, indicating waiver.

Lastly, Defendants argue that their litigation efforts do not evidence waiver because "there is a second plaintiff (and putative class)," so their "efforts to litigate those claims say little about Defendants' intentions as to Jones given that those efforts were required with respect to Manzi and the class." (Def.'s Reply, p. 8). In support of their argument, Defendants rely on a case in the Eastern District of Tennessee. (Def.'s Reply, p. 8). There, defendants filed a motion for judgment on the pleadings against every plaintiff, and then later filed a motion to compel arbitration against some of the plaintiffs, but not all. *Sevier Cnty. Sch. Fed. Credit Union v. Branch Banking & Tr. Co.*, No. 19-138, 2022 WL 19403610, at *9 (E.D. Tenn. Sept. 15, 2022). The court held that the

defendants "[could not] be said to have acted in a manner completely inconsistent with its right to arbitrate in filing the MJOP" because of the "need to engage in 'pretrial motion practice' against plaintiffs who [were not bound to arbitrate.]" *Id.* While the Court agrees that Defendants needed to engage in pretrial motion practice for Plaintiff Manzi and the class, a closer look at Defendants' Motion to Dismiss indicates their intention to specifically litigate Plaintiff Jones' claims. For example, as Defendants argued that Plaintiffs could not plead a "duty" to support their federal and state claims, they specifically noted that "the pharmacy filling Jones' prescription had no duty to substitute a generic," which in their view was "fatal to Jones' claims." (ECF No. 19-1, p. 42). Accordingly, the substance of their Motion to Dismiss, which made specific averments attacking the merits of Jones' claims, makes the filing of the motion an act that is inconsistent with their right to arbitrate, and evidence of an intent to litigate Jones' claims specifically.

In the Third Circuit, "the actions of the party who holds the right to invoke arbitration constitute the central focus of the inquiry." *Laguna v. Chester Hous. Auth.*, 662 F. Supp. 3d 545, 548 (E.D. Pa. 2023) (citing *White*, 61 F.4th at 339). Defendants have "actively participated in the case and not *once* mentioned arbitration in its court filings" for at least thirteen months. *Laguna*, 662 F. Supp. 3d at 548. Defendants "failure to notify [Plaintiff Jones] or the Court of the potential for arbitration demonstrated a decision to commit to litigation and was 'inconsistent with an intent to arbitrate,' supporting a conclusion that it has waived its right to seek arbitration of this case." *Id.* For this reason, Defendants' Motion to Compel Arbitration is DENIED. An appropriate Order follows.

    **IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**